IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | | |
|---|---|---|
| MATTHEW SCHAEFER and CYNTHIA SCHAEFER, | ) ) ) | |
| Plaintiffs, | ) ) | |
| vs. | ) ) ) | Case No. 10–cv–0791–MJR–PMF |
| UNIVERSAL SCAFFOLDING & EQUIP., LLC; BRAND ENERGY SERVS., LLC; and DYNEGY MIDWEST GENERATION, LLC; | ) ) ) ) ) | |
| Defendants. | ) ) | |

# MEMORANDUM & ORDER

**REAGAN, District Judge:**

This case, in which Plaintiffs have sued under theories of negligence, strict liability, failure to warn, negligent spoliation, and loss of consortium, comes before the Court on six motions: four motions for summary judgment and two motions to bar expert testimony pursuant to Federal Rule of Evidence 702 (and *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579 (1993)).  After a thorough review of the record, the parties' arguments, and relevant precedent, the Court rules as follows.

### PROCEDURAL HISTORY

According to the Second Amended Complaint, Plaintiff Matthew Schaefer was working for contractor (and Defendant) Brand Energy Services ("Brand") at a power plant owned by Defendant Dynegy Midwest Generation ("Dynegy") when a piece of scaffolding manufactured by Defendant Universal Scaffolding & Equipment ("Universal") struck him.  That piece of scaffolding has since disappeared, though it is undisputed it was in Dynegy's possession following Schaefer's injury.

Plaintiff and his wife sued in state court, and the case was removed (by Universal—the only Defendant at the time) in October 2010. By random draw, the case was assigned to District Judge G. Patrick Murphy, and Plaintiffs added Dynegy and Brand via amended complaints. The Second Amended Complaint targets Defendants thusly:

> **Count I —** a negligence claim against Universal, which designed and manufactured the piece of scaffolding alleged to have failed;

> **Count II —** a strict liability / products defect claim against Universal;

> **Count III —** a strict liability / failure to warn count against Universal;

> **Count IV —** a negligence claim against Dynegy, the owner / operator of the power plant where Plaintiff sustained his injury;

> **Counts V and VI —** negligent spoliation claims against both Dynegy and Brand re: the disappearance of the piece of scaffolding at the heart of the case;

> **Count VII —** a loss of consortium claim against all three Defendants.

Dynegy filed crossclaims for contribution against Brand and Universal, and after extensive discovery, motion practice began. In December 2012, Brand moved for summary judgment on a theory it owed no duty to Plaintiffs to preserve the scaffolding. After a June 2013 hearing, Judge Murphy denied that motion.

From August to September 2013, the parties filed the six motions now before the Court:

1. Plaintiffs' Motion for Summary Judgment against Brand and Dynegy (Doc. 115);

2. Universal's Motion for Summary Judgment (Doc. 117);

3. Universal's Motion to Bar Plaintiffs' Scaffolding Expert Richard Unger (Doc. 118);

4. Universal's Motion to Bar Plaintiffs' Scaffolding Expert Gene Maniago (Doc. 119);

5. Brand's Cross-Motion for Summary Judgment re: Plaintiffs' Spoliation Claims and Dynegy's s (Doc. 122);

6. Dynegy's Cross-Motion for Summary Judgment re: Plaintiffs' Spoliation Claims (Doc. 123).

Other than Universal's challenges to Plaintiffs' experts—September 2013 challenges that inexplicably drew no response until February 2014—the motions have ripened.[1]  For the reasons explained below, the Court DENIES Plaintiffs' Motion for Summary Judgment (Doc. 115) and the Cross-Motion for Summary Judgment filed by Brand (Doc. 122) and Dynegy (Doc. 123).  The Court also GRANTS Universal's Motion for Summary Judgment (Doc. 117) as to Plaintiff's claims, a ruling which renders Universal's challenges to Plaintiffs' experts (Doc. 118; Doc. 119) MOOT.

## FACTUAL BACKGROUND

In 2008, Dynegy bought over $2.5 million worth of scaffolding from Brand, and hired Brand to erect the scaffolding at Dynegy's power plant in Baldwin, Illinois.  Plaintiff Matthew Schaefer, a Brand employee, was helping to erect the scaffolding in November 2008.  Plaintiff was handing pieces of scaffolding up to a co-worker when, somehow, an approximately 3.5-foot piece fell approximately six feet onto his head.  According to the Second Amended Complaint, Plaintiff suffered "disabling injuries to his neck, back, head, shoulders and arms."  Plaintiff testified he was concussed, suffered a herniated disc, has memory loss and occasional headaches (though those were severe immediately following his accident), has had two spinal taps and currently suffers from back pain, neck pain, and numbness in his extremities.  (Doc. 116-3, 10–11).

There is some confusion as to who manufactured the piece of scaffolding that struck Plaintiff.  Plaintiff's co-worker testified the majority of the scaffolding was marked with labels indicating it was made by Defendant Universal Scaffolding & Equipment, and that much of that scaffolding was not of uniform length and had bent "ears" (portions of scaffolding that help stabilize the scaffolding structure at each junction).  (Doc. 116-8, 6–8).  (The power plant scaffolding

---

[1] Plaintiffs' responses to Universal's *Daubert* motions are almost four months out of time, and the Court **STRIKES** them from the docket.  Pursuant to Local Rule, it is within the Court's discretion to consider Plaintiffs' lack of response an admission of those motions' merits.  **SDIL–LR 7.1(c).**  But in light of the summary judgment ruling in Universal's favor, the Court declines to address the merits of Universal's motions, whether Plaintiffs have admitted to them or otherwise.

was of the "cup lock" or "cup and lock" variety, in which horizontal members are stabilized by a cup that slides down each vertical member and locks horizontal pieces in place).  Plaintiff's co-worker testifies that the 3.5-foot horizontal bar "popped … out" of its cup when he put in an adjoining horizontal piece.  (Doc. 116-8, 9–10).  Once the piece of scaffolding struck Plaintiff, a Brand supervisor, Ryan Wampler, directed all employees to "go around and hit all the cups," presumably to shore up the joints between adjoining pieces of scaffolding.  (Doc. 116-8, 14–15).

Wampler immediately told Dynegy's on-site Health & Safety Director Donald Watson about Plaintiff's accident.  Under instructions from his own supervisor, Watson told Wampler to secure the bar.  Wampler took the scaffolding to Watson, who in turn stored it in his office with at least one other fallen piece of scaffolding (that Watson kept to "make sure there [weren't] any issues").  (Doc. 116-1, 9).  Upon procuring the bar, Watson states: "I did look at it, and I went to the internet because I wanted to find out how much the piece weighed.  I want[ed] to know, you know, how much, what force was when it came down and hit [Plaintiff] in the head."  (Doc. 123-1, 20).  Wampler (and by extension, Brand) knew Dynegy had possession of the scaffolding component.  (Doc. 99-1, 7).

In December 2009, when Watson moved his office to O'Fallon, Illinois, he left the scaffolding bar in his Baldwin office.  In early 2010, Watson's Baldwin office was cleared, its contents stored in a training room at Baldwin.  In September or October 2010, a safety professional saw the scaffolding component, but by the time Dynegy was presented with a pointed request for the scaffolding (in November 2011), it was nowhere to be found.

In the meantime, Plaintiff filed a March 2009 workers' compensation suit and a December 2009 discovery complaint against Brand.  Watson's testimony is somewhat contradictory as to whether he knew about the workers' comp claim: at one point he thought he knew about Plaintiff's

workers comp claim (Doc. 123-1, 21–22); at another he claims not to remember knowing about any litigation until contacted by Dynegy's attorney (Doc. 123-1, 34–36).

Brand received the discovery complaint in February 2010 (during which time the scaffolding bar was either in Watson's old office or in the Baldwin training room). The suit in discovery contained three interrogatories that, though not demanding the specific piece of scaffolding that struck Plaintiff, broadly concerned the scaffolding equipment at the Baldwin site. (*See* Doc. 116-6, 7). Brand never responded to the suit in discovery.

In a June 2010 state court complaint, Plaintiff sued Universal on several products liability theories. (*See* Doc. 2-1). Universal removed the case to federal court, but it was not until November 2011 that Plaintiff requested the missing piece of scaffolding from Dynegy. (Plaintiff had been operating on the false assumption that Watson was a Brand supervisor, not a Dynegy employee). A thorough search of the Baldwin facility did not yield the scaffolding that struck Plaintiff.

## SUMMARY JUDGMENT STANDARD

The parties do not dispute that the federal summary judgment standard applies in this diversity case (or that Illinois law will control the substantive issues). *See Nationwide Ins. Co. v. Cent. Laborers' Pension Fund*, 704 F.3d 522, 525 (7th Cir. 2013); *BASF AG v. Great Am. Assurance Co.*, 522 F.3d 813, 818–19 (7th Cir. 2008); *Reid by Reid v. Norfolk & W. Ry.*, 157 F.3d 1106, 1110 n.2 (7th Cir. 1998). Summary judgment—which is governed by Federal Rule of Procedure 56—is proper only if the admissible evidence considered as a whole shows there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law. *Dynegy Mktg. & Trade v. Multiut Corp.*, 648 F.3d 506, 517 (7th Cir. 2011) (citing FED. R. CIV. P. 56).

The party seeking summary judgment bears the initial burden of demonstrating—based on the pleadings, affidavits and/or information obtained via discovery—the lack of any genuine issue of

material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). When (as with Plaintiffs' motion) the movant bears the burden of persuasion at trial, he must establish *all* the essential elements of his claim to prevail on summary judgment. *Id.* at 322. *Accord Surles v. Anderson*, 678 F.3d 452, 455–56 (6th Cir. 2012) (where movant bears burden of persuasion at trial, it **"must show that the record contains evidence satisfying the burden of persuasion and that the evidence is so powerful that no reasonable jury would be free to disbelieve it.")** (internal citation and quotation marks omitted).

After a properly supported motion for summary judgment is made, the adverse party "must set forth specific facts showing that there is a genuine issue for trial." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986). *See also Serednyj v. Beverly Healthcare, LLC*, 656 F.3d 540, 547 (7th Cir. 2011) (**"When a summary judgment motion is submitted and supported by evidence . . . the nonmoving party may not rest on mere allegations or denials in its pleadings")**. A mere scintilla of evidence supporting the non-movant's position is insufficient to overcome summary judgment; a non-movant will prevail only when it presents definite, competent evidence to rebut the motion. *Estate of Escobedo v. Martin*, 702 F.3d 388, 403 (7th Cir. 2012); *Parent v. Home Depot U.S.A., Inc.*, 694 F.3d 919, 922 (7th Cir. 2012). Summary judgment is only appropriate if, on the evidence provided, no reasonable juror could return a verdict in favor of the non-movant. *Carlisle v. Deere & Co.*, 576 F.3d 649, 653 (7th Cir. 2009).

The Court's role on summary judgment is not to evaluate the weight of the evidence, to judge witness credibility, or to determine the truth of the matter, but rather to determine whether a genuine issue of triable fact exists. *Nat'l Athletic Sportswear, Inc. v. Westfield Ins. Co.*, 528 F.3d 508, 512 (7th Cir. 2008). The Court considers the facts in a light most favorable to the non-movant. *Srail v. Vill. of Lisle*, 588 F.3d 940, 948 (7th Cir. 2009).

## ANALYSIS

The instant motions are guided by two substantive areas of Illinois law: spoliation and products liability. Plaintiffs, Dynegy, and Brand respectively argue, based on the sufficiency of the evidence, that they are entitled to summary judgment on the spoliation issue. Universal asserts the disappearance of the scaffolding that allegedly struck Plaintiff entitles it to summary judgment on Plaintiffs' products liability claims. The Court turns to the spoliation issue first.

### 1. *Plaintiffs' Motion for Summary Judgment — Denied*

In Illinois, spoliation of evidence is a form of negligence. *Martin v. Keeley & Sons, Inc.*, **979 N.E.2d 22, 27 (Ill. 2012).** A plaintiff claiming spoliation must prove: (1) the defendant owed duty to preserve the evidence; (2) the defendant breached that duty by losing / destroying the evidence; (3) the loss / destruction proximately caused the plaintiff's inability to prove an underlying lawsuit; and (4) the plaintiff suffered actual damages. *Id.* **(citing** *Dardeen v. Kuehling*, **821 N.E.2d 227, 231 (Ill. 2004); and** *Boyd v. Travelers Ins. Co.*, **652 N.E.2d 267, 270–71 (Ill. 1995)).** A plaintiff need not show it would have prevailed in the underlying action, only that it had a "reasonable probability of succeeding" in the underlying suit. *Boyd*, **652 N.E.2d at 271 n.2.**

Plaintiffs' motion is premised on the misplaced notion that dicta from *Boyd* (Illinois' leading case on spoliation, ***see Dardeen***, **821 N.E.2d at 231**) shifts the burden on causation to Defendants. There, in addressing one of the dissent's contentions (regarding an evidentiary presumption the majority declined to create), the Supreme Court of Illinois reasoned: "…if [the spoliation defendant] can prove that plaintiffs would have lost their underlying claim against [the underlying defendant] even with the missing [evidence], then [the spoliation defendant] has not caused plaintiffs' underlying injury." *Boyd*, **652 N.E.2d at 273.** According to Plaintiffs, that reasoning supports the proposition that "a Plaintiff should be allowed to recover with an evidentiary presumption where it cannot be proven that the underlying suit is meritless."

But *Boyd*'s holding is clear, and has been reinforced by subsequent, binding Illinois caselaw: the "*plaintiff … must prove*" the loss / destruction of evidence proximately caused plaintiff's inability to prove an underlying lawsuit.  **Martin**, 979 N.E.2d at 27 (citing **Boyd**, 652 N.E.2d at 273) **(emphasis here).**   Further, the *Boyd* Court expressly refused to create the kind of presumption advanced by Plaintiffs.  **Boyd**, 652 N.E.2d at 273.   In other words, Plaintiffs seek summary judgment on an element where they bear the burden of persuasion.[2]

Here, then, Plaintiffs must show the record contains evidence in its favor so powerful that no reasonable jury would be free to disbelieve it.  *See* **MOORE'S FED. PRACTICE § 56.13[1] (3d ed. 2000).**   There is some evidence on point: one witness testified that the majority of on-site scaffolding was Universal's, and another witness deponed the missing piece had a Universal sticker on it.  That may be enough for a reasonable jury to infer Universal scaffolding was present on the job site.  But it is far from the powerful showing required to connect the disappeared scaffolding with a reasonable probability of victory in Plaintiffs' case against Universal.  The pertinent lesson from *Boyd*'s dictum is this: Defendants should have an opportunity to attack the causation prong by convincing a jury that Plaintiffs' (who have the burden of proof) underlying suit against Universal is meritless (or, technically, that Plaintiffs did not have a reasonable probability of winning).

In the end, the question of proximate cause is for the jury to decide.  **Thompson v. Gordon**, 948 N.E.2d 39, 45 (Ill. 2011); *Swearingen v. Momentive Specialty Chems., Inc.*, 662 F.3d 969, 972 (7th Cir. 2011) (applying Illinois law).   It would usurp a jury's fact-finding duties to proclaim, as a matter of law, that Plaintiffs' evidence establishes causation here.  Plaintiffs' Motion for Summary Judgment is accordingly DENIED.

---

[2] Because Plaintiffs fail to establish causation, there is no need to address the other three prongs of the spoliation test. *See Anderson*, 477 U.S. at 248; *Lewis v. Kordus*, No. 09–cv–138, 2010 WL 3700020 (E.D. Wisc. Sept. 14, 2010) (party with burden at trial "can prevail only by proving *every* element of his case with evidence so compelling that no reasonable jury could return a verdict" for the non-movant.) (emphasis here).

## 2. *Brand / Dynegy Cross-Motions — Denied*

As discussed above, proving a spoliation case requires: (1) duty, (2) breach, (3) proximate cause, and (4) actual damages. ***Martin*, 979 N.E.2d at 27**. Brand, which never had possession of the scaffolding, raised the duty issue in its December 2012 summary judgment motion—a motion Judge Murphy denied because

> Brand knew of the accident; knew the piece of scaffolding had been segregated for safekeeping immediately following the accident; knew of the potential litigation; and knew [Plaintiff] was seeking the piece of scaffolding. … Despite its knowledge, when [Plaintiff] asked Brand for information regarding the piece of scaffolding, Brand said nothing.

(Doc. 109, 3).

Brand now resurrects that issue, and Dynegy likewise asserts it had no duty to preserve the scaffolding. Both parties challenge the sufficiency of Plaintiff's evidence as to breach, Brand argues there is no proximate cause, and both parties argue Plaintiffs suffered no damage from the scaffolding's disappearance. The elements are taken in turn.

### A. <u>Duty</u>

In Illinois, the general rule is that there is no duty to preserve evidence. ***Martin*, 979 N.E.2d at 28 (citing *Boyd*, 652 N.E.2d at 270)**. Establishing an exception to the "no duty" rule requires a two-part showing. *Id.* Under one prong (dubbed the "relationship" prong), a plaintiff must show that an agreement, contract, statute, special circumstance, or voluntary undertaking has given rise to a duty to preserve. *Id.* Under the other prong (the "foreseeability" prong), a plaintiff must show the duty extends to the specific evidence at issue by demonstrating a reasonable person in the defendant's position should have foreseen that the evidence was material to a potential civil action. *Id.*

Both Brand and Dynegy challenge the notion that "special circumstances" or foreseeability exist here, and Dynegy further argues its taking possession of the scaffolding does not constitute a voluntary undertaking.

A lack of foreseeability would be dispositive for either Defendant, but that prong is easily established. A reasonable entity in either Brand's or Dynegy's position should have foreseen the scaffolding was material to a potential civil action. As Judge Murphy penned in denying Brand's first summary judgment motion, Brand actually knew of the potential for scaffolding-centered litigation (to include Plaintiff's workers compensation litigation) when it failed to respond to Plaintiff's discovery requests regarding scaffolding.

As to Dynegy, the testimony of its site safety supervisor (Don Watson) shows it should have (and indeed did) foresee its materiality to potential civil litigation. Watson deponed "I did look at it, and I went to the internet because I wanted to find out how much the piece weighed. I want[ed] to know, you know, how much, what force was when it came down and hit [Plaintiff] in the head." (Doc. 123-1, 20). It is a short, logical step to establish Dynegy should have foreseen the necessity of the scaffolding to a civil suit, whether it be Plaintiff's workers' compensation action (which Watson knew about sometime after Plaintiff's injury)[3] or a products claim against Universal.

Dynegy also argues that Plaintiff's position is faultily premised on an endless duty to preserve—in other words, that whatever duty Dynegy had should, as a matter of law, have terminated by autumn 2010, when Dynegy last possessed the scaffolding. That argument is better conceived thusly: that in possessing the scaffolding for (almost) two years after the accident, Dynegy did not *breach* its duty. In Illinois, questions of breach are left for the jury to decide. ***Swearingen v.***

---

[3] Watson's testimony was contradictory: he thought he knew about Plaintiff's workers comp claim (Doc. 123-1, 21–22); but also claimed not to remember knowing about any litigation until contacted by Dynegy's attorney (Doc. 123-1, 34–36)). For the purposes of Dynegy's summary judgment motion, of course, any such contradictions must be construed against Dynegy. The inference against Dynegy is an easy one to make: it is unlikely Dynegy's attorney would have notified Watson about Plaintiff's workers compensation claim—a claim that only targeted Brand. (*See* Doc. 116-6, 10).

*Momentive Specialty Chems., Inc.*, 662 F.3d 969, 972 (7th Cir. 2011). *See also Marshall v. Burger King Corp.*, 856 N.E.2d 1048, 1057 (Ill. 2006) (explaining the "involved, complex and ... nebulous" concept of duty, and how it is often used to describe whether a defendant's act or omission should be actionable). September 2010 (twenty-two months after Plaintiff's accident) is the last date anyone is certain Dynegy still possessed the scaffolding. The undersigned cannot hold that the possessor of evidence has a duty to preserve *shorter* than the two-year statute of limitations in Illinois products liability cases. *See Mitsias v. I-Flow Corp.*, 959 N.E.2d 94, 100 (Ill. App. Ct. 2011) (citing 735 ILCS 5/13–213(d)).

Foreseeability being established, the Court turns to the "relationship" prong, satisfied here by special circumstances (vis-à-vis Brand) and a voluntary undertaking (vis-à-vis Dynegy).

  i.    Brand — Duty via Special Circumstances

Illinois courts have not precisely defined a "special circumstance" in recognizing a duty in a spoliation claim. *Martin*, 979 N.E.2d at 30. Brand attempts (and fails) to analogize to and distinguish from controlling Illinois caselaw to establish its lack of duty.

In *Dardeen v. Kuehling*, a homeowner defendant asked its insurer (who was held to have no duty) whether she could remove hazardous bricks from the sidewalk outside her home. *Dardeen*, 821 N.E.2d 227, 228 (Ill. 2004). Brand points to the fact the insurer never had control of the bricks and that the mere opportunity to exercise control (i.e. tell the bricks' owner to keep the bricks intact) did not give rise to a duty. But Brand ignores pertinent details here: that (unlike the *Dardeen* insurer) Brand was *targeted by a suit in discovery* while it knew the scaffolding was (or had been) sitting safely in Dynegy's possession. Unlike *Dardeen*, where the court noted the plaintiff's wife could have taken photographs of the hazardous bricks, Plaintiff here was never in a position to make any observations of the scaffolding, which was immediately segregated by Wampler and Watson. And the *Dardeen* court underscored the public policy served by an insurer telling its insured to remove a

11

hazard from a public thoroughfare.  *Id.* **at 233.**  The opposite is true here: public policy is thwarted where one business fails to respond to legitimate discovery requests.  ***Manns v. Briell*, 811 N.E.2d 349, 355 (Ill. App. Ct. 2004) ("It is the established public policy in this state to permit pretrial discovery…").**

In *Knight v. Beckler*, a spoliation defendant had a duty when it was notified of its obligation to preserve a big rig trailer immediately after an accident.  ***Knight*, No. 08–4046, 2011 WL 577113 (C.D. Ill. Feb. 9, 2011).**  Brand points to the fact that it (unlike the *Knight* defendant) never had control of the evidence, that it (unlike the *Knight* defendant) was not immediately notified of its obligation to preserve, and that it turned the scaffolding over to Dynegy, the rightful owner.  But the decision in *Knight* did not hinge on the immediacy of the notification, just that the defendant knew of its obligation to preserve before the evidence was spoiled.  Brand's reading of *Knight* ignores subsequent developments in this case, where Brand knew the scaffolding was a material piece of evidence and failed to take any action to either inform Dynegy of Plaintiff's discovery requests or, more importantly, answer Plaintiff's discovery requests about the scaffolding.  ***See also Dardeen*, 821 N.E.2d at 233 ("We do not intimate that … possession is required in every negligent spoliation case.").**  Timing is only important here (as in *Knight*) insofar as Brand had an obligation to tell Plaintiff about the scaffolding's location before the scaffolding disappeared.

Finally, Brand points to *Martin v. Keeley & Sons*, in which there was no duty to preserve a large concrete I-beam that had fallen from a bridge construction project.  ***Martin*, 979 N.E.2d at 23.**  There, Martin never asked Keeley (a contractor, and the plaintiff's employer) to preserve the I-beam before Keeley broke it up to remove it.  *Id.*  While Illinois' Supreme Court held, that in the absence of such notice, Keeley's status as employer, its possession/control of the I-beam, and its status as potential litigant did not suffice to establish "special circumstances," *id.* **at 31–32,** the

instant Plaintiff asked Brand about the scaffolding while it was (or may have been) in Dynegy's possession—before the scaffolding was lost.[4]

The undersigned need not elaborate on Judge Murphy's reasoning in holding that a state court discovery complaint—which Brand ignored—constituted the special circumstances necessary to establish a duty. "Brand knew of the accident; knew the piece of scaffolding had been segregated for safekeeping immediately following the accident; knew of the potential litigation; and knew [Plaintiff] was seeking the piece of scaffolding. … Despite its knowledge, when [Plaintiff] asked Brand for information regarding the piece of scaffolding, Brand said nothing." (Doc. 109, 3). Brand had a duty to respond to Plaintiff's suit in discovery. Whether failing to answer that suit caused Plaintiff's injuries, or whether the failure was too attenuated from the possibility of products liability victory, will be left to the jury to decide. (*See infra* Part 1.B).

ii.      Dynegy — Duty via Voluntary Undertaking

A voluntary undertaking requires a showing of a defendant's affirmative conduct evincing its intent to voluntarily assume a duty to preserve. **Martin, 979 N.E.2d at 28 (citing Boyd, 652 N.E.2d at 271).** In *Martin*, there was "no evidence" the defendant voluntarily undertook to preserve the I-beam for the purpose of future litigation: it was destroyed within days. **Martin, 979 N.E.2d at 28.** The *Martin* court relied on *Boyd*, Illinois' seminal spoliation case, in which an insurance company took possession of a heater that exploded. **Boyd, 652 N.E.2d at 269.** The relevant factors in *Boyd* were that the "the insurer's employees removed the heater from the plaintiff's home, took it into their possession for the purpose of investigating the workers' compensation claim, and knew that the heater was evidence relevant to future litigation." **Martin, 979 N.E.2d at 29 (applying Boyd, 652 N.E.2d at 269–70).**

---

[4] It is worth noting, though not determinative to the holding here, that *Martin*'s I-beam and the scaffolding are of vastly different proportions. The I-beam had to be broken and removed from a public accident site with a hydraulic hammer after state authorities had investigated the site; the 3.5-foot piece scaffolding here was immediately preserved when carried away from the accident scene by one man.

The instant case hews closer to *Boyd* than to *Martin*.  As in *Boyd*, a Dynegy employee removed the evidence and (with knowledge it was relevant to litigation) segregated it for the purpose of investigating it: Don Watson took the scaffolding to his office, performed internet research on it and (at some point while Dynegy still possessed the scaffolding) knew Plaintiff had filed a workers' compensation claim regarding the accident.  (*See* FN 3, *supra*).  And unlike *Martin*, the scaffolding here was not destroyed within days of the accident, but rather immediately segregated as evidence and, years later, lost.  Watson's segregation of the scaffolding was affirmative conduct showing Dynegy's intent to undertake a duty to preserve the evidence.  His voluntary undertaking establishes Dynegy's duty.  **See also Stoner v. Wal-Mart Stores, Inc., No. 06–4053, 2008 WL 3876077, at *3–4 (C.D. Ill. Aug. 18, 2008) (duty where store employees knew of videotape that captured the events surrounding plaintiff's injury and employees took steps to preserve it).**

### B.  <u>Breach, Proximate Cause, and Damages — Questions of Fact Remain</u>

Defendants' various protestations about breach, proximate cause, and damages are swallowed by one general principle.  In Illinois, whether a defendant's act or omission represents a breach of duty—and whether such action or omission proximately caused the plaintiff's injury—are generally issues of fact to be decided by a jury.  **Thompson v. Gordon, 948 N.E.2d 39, 45 (Ill. 2011); Swearingen v. Momentive Specialty Chems., Inc., 662 F.3d 969, 972 (7th Cir. 2011) (applying Illinois law).**  Only when there is no material issue regarding the matter, or only one conclusion is clearly evident, are breach and proximate cause questions of law.  **Furry v. United States, 712 F.3d 988, 992 (7th Cir. 2013).**

Questions of fact preclude summary judgment here.  It is possible that Plaintiffs cannot show a reasonable probability they would have won a claim against Universal, even if Plaintiffs had the scaffolding.  A reasonable jury could alternatively find Brand, Dynegy, or both, acted reasonably and discharged their respective duties to Plaintiffs.  But a jury could find otherwise: that either

14

Defendant (or both of them) breached a duty to preserve the scaffolding, and that such breach led to the loss of the scaffolding and undercut a viable products claim against Universal. *See Boyd*, 652 N.E.2d at 271 n.2 (plaintiff need only show a "reasonable probability of succeeding" in the underlying suit to show causation).

The Court declines to hold, as Dynegy insists, that either party "did what a reasonable person would do" as a matter of law. *See Agnello v. Puzzo*, 443 N.E.2d 648, 651 (Ill. App. Ct. 1982) ("The question of defendant's negligence becomes a matter of law only where reasonable men of fair understanding" could reach only one conclusion); *Merca v. Rhodes*, 960 N.E.2d 85, 97 (Ill. App. Ct. 2011) ("The determination of what conduct is negligent or contributorily negligent is a composite of the experiences of average people, and is left to the jury for evaluation."). Whether Brand and Dynegy (or both of them) breached their duty, and to what extent (and in what proportion) their potential negligence injured Plaintiff by thwarting his products claim against Universal, will be left to a finder of fact. The Cross-Motions filed by Brand and Dynegy are DENIED.

### 3. *Brand's Cross-Motion against Dynegy — Denied*

Brand's Cross-Motion against Dynegy is (though underdeveloped) based on an argument that the loss of scaffolding was entirely Dynegy's fault. Dynegy's  against Brand invokes Illinois' Joint Tortfeasor Contribution Act, 740 ILCS 100/2 (West 2008), which prescribes that each party whose fault contributed to an injury pays its *pro rata* share of common liability. **740 ILCS 100/2, 3 (West 2008).** As discussed above, a jury *could* find either Brand or Dynegy breached a duty to preserve, thereby injuring Plaintiffs. And under the Contribution Act, assessing the respective culpabilities of the parties is a matter left to the jury. *See Sakellariadis v. Campbell*, 909 N.E.2d 353, 362 (Ill. App. Ct. 2009) (citing *Lilly v. Marcal Rope & Rigging, Inc.*, 682 N.E.2d 481, 484–85 (Ill. 1997) (abrogated on other grounds by *Unzicker v. Kraft Food Ingredients Corp.*,

783 N.E.2d 1024, 1029–33 (Ill. 2002)).   Brand's Cross-Motion for Summary Judgment against Dynegy is accordingly DENIED.

### 4.   *Universal's Motion for Summary Judgment — Granted*

Universal, which by way of reminder is targeted by negligence, strict liability, and failure-to-warn claims, moves for summary judgment because the piece of scaffolding that struck Plaintiff is nowhere to be found.   Generally, Illinois law lays out two paths to establish products liability: negligence and strict liability.   *See Calles v. Scripto-Tokai Corp.*, 864 N.E.2d 249, 263–64 (Ill. 2007).   Failure to warn cases are simply a subset of strict liability.   *See Lamkin v. Towner*, 563 N.E.2d 449, 457 (Ill. 1990); *Mikolajczyk v. Ford Motor Co.*, 901 N.E.2d 329, 338 (Ill. 2008) (citing *Hansen v. Baxter Healthcare Corp.*, 764 N.E.2d 35, 42 (Ill. 2002)).[5]   The analysis below therefore circumscribes all the claims against Universal.

In both negligence and strict liability products claims, a plaintiff must identify a product's manufacturer.   *Tragarz v. Keene Corp.*, 980 F.2d 411, 418 (7th Cir. 1992) (citing *Zimmer v. Celotex Corp.*, 549 N.E.2d 881, 883 (Ill. App. Ct. 1989)); *Hanks by Old Nat'l Trust Co. v. Korea Iron & Steel Co.*, 993 F.Supp. 1204, 1211 (S.D. Ill. 1998).   Each route to products liability victory also requires a showing of proximate cause between the product's failure and the plaintiff's injuries.   *Calles*, 864 N.E.2d at 263 (negligence); *Mikolajczyk*, 901 N.E.2d at 345 (strict liability).   Both manufacturer identity and proximate cause can be shown through circumstantial evidence—the actual product in question does not necessarily have to be produced.   *See Davis v. Material Handling Assocs. Inc.*, 929 N.E.2d 1229, 1237 (Ill. App. Ct. 2010).

Circumstantial evidence, though, must include proof that tends to exclude other extrinsic causes, or an expert opinion that the product contained an unreasonably dangerous defect at the time it left the manufacturer's control.   *Sanchez v. Firestone Tire & Rubber Co.*, 604 N.E.2d

---

[5] Strict liability has been called the "preferred" theory in products liability cases.   *Show v. Ford Motor Co.*, 697 F.Supp. 2d (N.D. Ill. 2010).

**948, 949–50 (Ill. 1992).**  Liability cannot be based on "mere speculation, guess, or conjecture, and the circumstances shown must justify an inference of *probability* as distinguished from mere *possibility*" of causation.  ***Sanchez*, 604 N.E.2d at 950 (emphasis here).  *Accord Trigsted v. Chi. Transit Auth.*, 994 N.E.2d 682, 691 (Ill. Ct. App. 2013); *Sorce v. Naperville Jeep Eagle, Inc.*, 722 N.E.2d 227, 237 (Ill. Ct. App. 1999).**  An inference "may not be drawn merely from evidence that an injury occurred."  ***Sorce*, 722 N.E.2d at 238.**

Though the negligence and strict products liability tests are otherwise slightly divergent (***see Calles*, 864 N.E.2d at 264 (strict liability focuses on the condition of the product; negligence claim also puts defendant's fault at issue**)), that divergence is immaterial here.  Universal only challenges the sufficiency of the evidence regarding the identity of the scaffolding's manufacturer, and regarding proximate cause between the scaffolding's design and Plaintiff's injuries.  Though there is some evidence on the record that Universal manufactured the disappeared scaffolding, Universal points to three compelling cases to support its position on causation.

In *Phillips v. U.S. Waco Corp.*, a scaffolding collapse sparked a suit against the scaffolding's manufacturer.  ***Phillips v. U.S. Waco Corp.*, 516 N.E.2d 670, 671 (Ill. App. Ct. 1987)**.  The plaintiff failed to produce the scaffold, and the defendant argued (and showed evidence) there were numerous reasons for the collapse besides any alleged design defect.  ***Id.* at 673.**  The scaffold in question was never examined, and the appellate court reasoned "[t]he mere occurrence of the collapse of the scaffold … does not establish the … manufacturer's negligence."  ***Id.* at 675.**  The court continued: "Without an examination of the scaffold itself to determine if the collapse was a result of a preexisting defect, [the plaintiff] could never prove, directly or inferentially, a claim based in negligence or strict liability."  ***Id.***

In *Sanchez v. Firestone*, a products case against a tire manufacturer, a blown-out tire's inner tube could not be located.  ***Sanchez*, 604 N.E.2d at 949.**  Plaintiffs' expert examined neither the

inner tube nor any photographs of it, and the appellate court affirmed summary judgment because that evidence indicated nothing more than a "mere possibility" the inner tube was faulty. **Sanchez, 604 N.E.2d at 950.**

Both *Phillips* and *Sanchez* trace their lineage (and cite) to *Shramek v. General Motors*, another tire blowout case.  In that case, summary judgment was required because blowouts can be attributed to myriad causes. **Shramek v. General Motors Corp., 216 N.E.2d 244, 248–49 (Ill. Ct. App. 1966).** "[W]ithout any examination of the tire designed to elicit the cause of the blowout and without the tire itself or any hope or expectation for its recovery, plaintiff could never prove, directly or inferentially, a case of negligence … or strict liability." *Id.* **at 249.**  The determination of why the tire blew out "could only be left to pure speculation." *Id.* **at 248.**

Here, the missing piece of scaffolding leaves Plaintiffs' products claims against Universal squarely in the crosshairs of *Phillips, Sanchez,* and *Shramek*.  Like those cases, the critical piece of evidence is unavailable for examination, and any finding the scaffolding was defective when it left Universal's control would be speculative.  One of Plaintiffs' proposed experts cedes the point when he opines: "The failure can be attributed to improper length, distorted tab ears, or an improperly aligned end tab cap.  We cannot identify as to which defect or combination of defects existed at the time of the accident since the actual … piece is not available for our inspection." (Doc. 116-9).  The expert's statement presumes a defect, but effectively admits investigators cannot identify *any* defect existed at the time of the accident.  The same expert answered affirmatively when asked "there are probably more causes for potential distortion of tab ears than you and I could come up with today…" (Doc. 117-8, 2).

As in *Phillips*, then, there are numerous reasons for the collapse besides design defects.  As in *Sanchez*, Plaintiffs' expert did not examine the product at issue (and nobody took photos of the scaffolding before it disappeared).  At best, a finder of fact could infer from the accident's

occurrence the possibility that a design defect caused the scaffolding collapse and Plaintiff's injuries. But a possibility is not enough to survive summary judgment.

Even presuming Plaintiffs' experts survived Defendant's *Daubert* motions, the evidence here would leave a finder of fact with no way to connect Plaintiff's injuries with Universal's scaffolding, other than to speculate. *See Shramek*, **216 N.E.2d at 248 ("On such a record, a jury would have no basis to determine whether the [product] was defective when it left defendants' control and whether that defect ultimately caused plaintiff's injuries.   Under such circumstances, it is manifest that plaintiff did not raise genuine issues of fact…").** Universal's Motion for Summary Judgment (**Doc. 117**) is **GRANTED**, rendering its *Daubert* motions (**Doc. 118** and **Doc. 119**) against Plaintiffs' experts **MOOT**.

## DYNEGY'S CROSSCLAIM AGAINST UNIVERSAL — SEVERED

Federal Rule of Civil Procedure Rule 42(b) is used to bifurcate factually interlinked claims where final resolution of one claim affects the resolution of the other. *Gaffney v. Riverboat Servs. of Indiana, Inc.*, **451 F.3d 424, 442 (7th Cir. 2006).**[6]   A court may order separate trials of crossclaims "for convenience, to avoid prejudice, or to expedite and economize." **FED. R. CIV. P. 42(b).**   So long as the parties' Seventh Amendment rights are not violated (a concern not at issue here), a district court has broad discretion to so bifurcate a trial when any of Rule 42(b)'s criteria are met. *Houseman v. U.S. Aviation Underwriters*, **171 F.3d 1117, 1121 (7th Cir. 1999).**

Here, both judicial economy and the avoidance of prejudice will be served by bifurcating Dynegy's crossclaim against Universal.  The contribution crossclaim is premised on products liability by Universal, and it would confuse a jury to evaluate evidence—evidence which may otherwise be inadmissible—on Dynegy's products liability theory against Universal while concurrently evaluating Plaintiffs' spoliation claims.  Universal could suffer prejudice in such a trial, which should focus on

---

[6] The Court finds Rule 42(b) severance applicable, rather than creating a separate action under Rule 21.  For Rule 21 to apply, one claim must be capable of resolution despite the outcome of the other. *Gaffney*, **451 F.3d at 442.**

whether Dynegy's / Brand's loss of evidence cost Plaintiffs a reasonable probability of succeeding in an underlying suit, not whether Dynegy *does* prevail on a products liability theory. ***See Boyd***, **652 N.E.2d at 271 n.2.** Should a jury find against Plaintiffs, Dynegy's crossclaim will be moot, and the need for followup factfinding would disappear. The Court further notes the scheduling concerns of Universal's attorneys, *see* Doc. 153 are addressed by bifurcation.

Pursuant to Rule 42(b), Dynegy's crossclaim against Universal is bifurcated and, if necessary, will be set for jury trial after Plaintiffs' claims are resolved. ***See Bailey v. Northern Trust Co.*, 196 F.R.D. 513, 517–18 (N.D. Ill. 2000) (after weighing convenience, prejudice, judicial economy and expense, "confusion to the jury and prejudice to the defendant offset any possible benefits of a joint trial").**

CONCLUSION

Plaintiffs' untimely responses to Universal's *Daubert* motions (**Doc. 155, Doc. 156**) are **STRICKEN** from the docket, rendering Universal's motion to strike (**Doc. 157**) **MOOT**.

For the reasons explained above, the Court **DENIES** Plaintiffs' Motion for Summary Judgment (**Doc. 115**), **DENIES** the Cross-Motions for Summary Judgment filed by Brand (**Doc. 122**) and Dynegy (**Doc. 123**), and **GRANTS** Universal's Motion for Summary Judgment (**Doc. 117**). Universal's Motions to Bar Plaintiffs' Experts (**Doc. 118, Doc. 119**) are accordingly **MOOT**. The following counts remain:

> **Count IV — a negligence claim against Dynegy;**
>
> **Counts V and VI — negligent spoliation claims against Dynegy and Brand;**
>
> **Count VII — loss of consortium claims against Dynegy and Brand.**

Dynegy's crossclaims against Brand and Universal are also live, but the crossclaim against Universal is **SEVERED** pursuant to Federal Rule of Civil Procedure 42(b).

A final case management issue remains: the Joint Motion to Continue the Trial Date (**Doc. 153**) is **DENIED**.  Dynegy (who requests the continuance due to the absence of Donald Watson, a critical witness) is granted **LEAVE** to take a **VIDEO DEPOSITION** of Mr. Watson outside the discovery deadline.  The trial date is a firm setting around which other trials and hearings have been tightly scheduled.  To continue that date (given this District Judge's current trial docket, with no available civil trial slots until late spring 2015) would result in an unacceptable delay.  The parties remain free to consent to trial before Magistrate Judge Frazier, who enjoys a more flexible docket and generally can accommodate joint continuance requests for an agreed trial date.[7]

The case remains set for a jury trial on March 17, 2014.  Final pretrial conference remains set for 2:30 p.m. on March 6, 2014.  The parties are **DIRECTED** to contact Judge Frazier's chambers to schedule a settlement conference in advance of the final pretrial conference.

**IT IS SO ORDERED.**

DATE: <u>February 10, 2014</u>                    <u>s/ *Michael J. Reagan*</u>
                                                 **MICHAEL J. REAGAN**
                                                 United States District Judge

---

[7] Consent to the Magistrate is mentioned solely as one option; adverse consequences will not result from any party electing to withhold consent.