# IN THE UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| MATTHEW SCHAEFER and CYNTHIA SCHAEFER, | ) ) ) |
| Plaintiffs, | ) ) |
| v. | ) Case No. 3:10 CV 791 RJD ) |
| UNIVERSAL SCAFFOLDING & EQUIPMENT, LLC, et al., | ) ) ) |
| Defendants. | ) |

## MEMORANDUM AND ORDER

**DALY, Magistrate Judge:**

Before the Court are the various pretrial motions and trial briefs of the parties. (*See* Doc. 272.) On June 16, 2010, Plaintiffs filed this action against Defendant Universal Scaffolding & Equipment ("Universal"), alleging claims of negligence, strict liability, and loss of consortium. (Doc. 2-1.) The complaint alleged that, on November 17, 2008, Matthew Schaefer was injured by a falling scaffolding bar, which Defendant Universal manufactured. (*Id.*) On January 12, 2012, Plaintiffs moved for leave to amend the complaint, stating that Defendants Brand Energy Services ("Brand") and Dynegy Midwest Generation ("Dynegy") failed to preserve the scaffolding bar and seeking to add claims of negligent spoliation against them. (Docs. 51, 76.) On February 10, 2014, the Court granted summary judgment to Defendant Universal, leaving Plaintiff's claims of negligence against Dynegy, negligent spoliation against Dynegy and Brand, and loss of consortium against Dynegy and Brand. (Doc. 159.) On January 23, 2015, the Court granted summary judgment to Dynegy on the negligence claim. (Doc. 199.) On June 4, 2015, the Court granted summary judgment on the remaining claims. (Doc. 247.) On October 7, 2016, the Seventh Circuit reversed the most recent summary judgment decision and remanded the case

to the Court for further proceedings. (Doc. 261.) Accordingly, the remaining claims consist of Plaintiffs' claims against Dynegy and Brand for negligent spoliation and loss of consortium.[1]

Upon remand, the Court set a trial date and requested a status update with respect to any remaining trial-related issues. (Docs. 264, 265, 273.) On March 23, 2017, the Court heard oral argument on several pretrial motions and issues raised in trial briefs, including the issue of whether Defendants would be allowed to call Plaintiff's counsel as a witness for trial and whether Plaintiffs' loss of consortium claim will proceed to trial. (Doc. 276.) The parties also requested that the Court determine the appropriate measure of damages for negligent spoliation claims. (*Id.*)

Testimony of Plaintiffs' Counsel

Plaintiffs move to quash trial subpoenas for their counsel, arguing that counsel's testimony is not relevant or necessary to prove the issues remaining for trial. (Doc. 223.) The Federal Rules of Civil Procedure authorize the Court to issue subpoenas for attendance at trial, hearing, or deposition. Fed. R. Civ. P. 45(c)(1). The rules also provide that a court shall quash or modify a subpoena if it "subjects a person to undue burden." Fed. R. Civ. P. 45(d)(3)(iv). In analyzing whether compliance with a subpoena would be unduly burdensome, a court must ask whether "the burden of compliance with [the subpoena] would exceed the benefit of production of the material sought by it." *See Northwestern Mem. Hosp. v. Ashcroft*, 362 F.3d 923, 927 (7th Cir. 2004). This test takes into account the following factors: (1) whether the party subpoenaed is a non-party in the underlying suit; (2) whether the information requested is relevant; (3) whether the party requesting the information has a substantial need for it; (4) whether the document request is overly broad; (5) whether the time period the request covers is reasonable;

---

[1] The record reflects that Defendant Dynegy's claims for contribution against Defendant Brand and Universal survived summary judgment and also remain pending. (Doc. 159.) However, these claims are not relevant for purposes of this Memorandum and Order.

(6) whether the request is sufficiently particular; and (7) whether the request imposes a burden on the subpoenaed party. *American Soc. of Media Photographers, Inc. v. Google, Inc.*, 2013 WL 1883204, at *2 (N.D. Ill. 2013); *see also Wi-Lan v. LG Electronics, Inc.*, 2011 WL 148058, at *2 (N.D. Ill. 2011); *Whitlow v. Martin*, 263 F.R.D. 507, 512 (C.D. Ill. 2009). The decision to grant, deny, or modify a motion to quash a subpoena is within the district court's discretion. *Griffin v. Foley*, 542 F.3d 209, 223 (7th Cir. 2008).

To demonstrate the burden imposed by the subpoenas, Plaintiffs rely on the advocate-witness rule, which "articulates the professional impropriety of assuming the dual role of advocate and witness in a single proceeding." *United States v. Johnston*, 690 F.2d 638, 642 (7th Cir. 1982). "If the need for his testimony becomes apparent after the attorney has undertaken employment in the case, he must withdraw from the conduct of the trial." *Id.* Plaintiffs' counsel has also represented that Plaintiffs' counsel would withdraw from representation if required to testify. Therefore, the Court finds that requiring Plaintiffs' counsel to testify would present a substantial burden to Plaintiffs.

The Court next considers whether the burden of requiring Plaintiffs' counsel to testify exceeds the probative value of such testimony. "[A] plaintiff claiming spoliation of evidence must prove that: (1) the defendant owed the plaintiff a duty to preserve the evidence; (2) the defendant breached that duty by losing or destroying the evidence; (3) the loss or destruction of the evidence was the proximate cause of the plaintiff's inability to prove an underlying lawsuit; and (4) as a result, the plaintiff suffered actual damages." *Martin v. Keeley & Sons, Inc.*, 979 N.E.2d 22, 27 (Ill. 2012). As articulated by the Seventh Circuit:

> So, to prevail on their spoliation claims, the Schaefers must make two showings. First, they must show that the loss of the scaffolding piece would cause them to lose their underlying suit. And second, they must show that if they had the scaffolding piece, they would have a "reasonable probability" of winning. But

"reasonable probability" is less than proof of success by a preponderance of the evidence, because that is the standard required to show that they would have won the underlying suit.

*Schaefer v. Universal Scaffolding & Equip.*, LLC, 839 F.3d 599, 611 (7th Cir. 2016) (citing *Boyd v. Travelers Ins. Co.*, 652 N.E.2d 267, 271 (1995)).

The Court has determined that Defendants had a duty to preserve the scaffolding bar, and the Seventh Circuit has affirmed this determination. (Docs. 159, 261.) The parties need not relitigate the issue at trial. *See* Fed. R. Civ. P. 56(g). Counsel's testimony may be relevant to whether Defendants breached the duty to preserve and the impact of the scaffolding bar on the underlying causes of action, but counsel's testimony is not necessary to establish, or defend against, these elements. Based on oral arguments, the essence of Defendants' argument on breach of duty is the uncontested fact that Plaintiffs and their representatives did not request the scaffolding bar until November 2011. While Defendants may find it helpful to question counsel about the thought process in not requesting the scaffolding bar sooner, such testimony is not necessary for Defendants to show that they fulfilled the duty to preserve. Moreover, although Plaintiffs' counsel could likely offer testimony on the merits of the underlying products liability claim, Defendants can amply address Plaintiffs' reasonable probability of winning through other means, including expert testimony, the prevalence of flaws with scaffolding parts at the plant, and descriptions of the scaffolding bar at issue.

Additionally, Defendant Brand seeks Plaintiffs' counsel's testimony in furtherance of the affirmative defense of comparative fault and asks the Court to find that Plaintiffs' counsel acted as Plaintiffs' agent. (Doc. 227.) Illinois courts have adopted the doctrine of comparative negligence under which "each party must bear the burden of the percentage of damages of all parties in direct proportion to his fault." *Alvis v. Ribar*, 421 N.E.2d 886, 897 (Ill. 1981). "A

4

principal-agent relationship exists when the principal has the right to control the manner in which the agent performs his work and the agent has the ability to subject the principal to personal liability." *Amigo's Inn, Inc. v. License Appeal Comm'n of City of Chicago*, 822 N.E.2d 107, 113 (Ill. App. Ct. 2004). Under Illinois law, "when attorneys act pursuant to independent professional judgment, they are presumptively independent contractors whose alleged misconduct may not be imputed to their clients, unless it is shown that the client directed, controlled, authorized, or ratified the alleged misconduct." *Horwitz v. Holabird & Root*, 816 N.E.2d 272, 284 (Ill. 2004). Defendants have not shown that Plaintiffs directed their counsel in this manner, and the Court denies Defendant Brand's motion for a finding that Plaintiffs' counsel acted as Plaintiffs' agent. Although Plaintiffs' instructions to counsel and knowledge of his counsel's conduct may be relevant for purposes of comparative fault, eliciting testimony from Plaintiffs' counsel is not necessary for this purpose.

Based on the foregoing, the Court finds that the burden of requiring Plaintiffs' counsel to testify significantly exceeds the probative value of such testimony. Accordingly, Plaintiffs' Motion to Quash the Trial Subpoenas for Counsel is granted.

Defendants further ask the Court to find that Plaintiffs have waived the attorney-client privilege and work product privilege with regard to specific communications by asserting the spoliation claim and to find that Defendants are entitled to question Plaintiffs regarding communications with counsel in an effort to establish Plaintiffs' comparative fault. (Doc. 219.) Under Illinois law, the protections afforded by the attorney-client and work product privileges can be waived by the client. *Lama v. Preskill*, 818 N.E.2d 443, 448 (Ill. App. Ct. 2004). The privilege may be impliedly waived when the client asserts claims or defenses that put his or her communications with the attorney at issue in the litigation. *Shapo v. Tires 'N Tracks, Inc.*, 782

N.E.2d 813, 819 (Ill. App. Ct. 2002). An implied waiver thus occurs "where a party voluntarily injects either a factual or legal issue into the case, the truthful resolution of which requires an examination of the confidential communications." *Pyramid Controls, Inc. v. Siemens Indus. Automations, Inc.*, 176 F.R.D. 269, 272 (N.D. Ill. 1997). "[T]he attorney-client privilege is waived when a litigant places information protected by it in issue through some affirmative act for his own benefit, and to allow the privilege to protect against disclosure of such information would be manifestly unfair to the opposing party." *Id.* Examples of such affirmative acts include cases in which clients sue their attorneys for legal malpractice or to contest legal fees or when a plaintiff asserts the discovery exception to a statute of limitations. *Lama*, 818 N.E.2d at 448-49.

The Court finds that Plaintiff's spoliation claim, by itself, is not an affirmative act by Plaintiff that places attorney-client communications directly at issue. Defendants' assertion of an affirmative defense of comparative fault cannot be an affirmative act of Plaintiff which necessitates a waiver of privilege. Defendants' arguments assume that Plaintiffs will place such communications at issue when questioned about their efforts to preserve the bar. Although this is a reasonable assumption, Plaintiffs have not yet done so, and the Court will withhold finding a waiver of privilege until that time. Accordingly, Dynegy's Motion for A Pretrial Finding of Waiver is denied.

Loss of Consortium

Defendants move for judgment on the pleadings with respect to Plaintiffs' loss of consortium claim. (Docs. 200, 201.) "Loss of consortium encompasses two basic elements of the marital relationship: loss of support and loss of society, which includes companionship and sexual intercourse." *Brown v. Metzger*, 470 N.E.2d 302, 304 (Ill. 1984). "To recover on a loss

of consortium claim, the deprived spouse must prove liability on the part of the defendant, marriage to the injured spouse, and damages." *Johnson v. May*, 585 N.E.2d 224, 232 (Ill. 1992).

Plaintiffs' other remaining claims consist of the claims for negligent spoliation against Dynegy and Brand for loss of the scaffolding bar, and the complaint alleges that Plaintiffs' damages consist of what they would have been able to recover against Universal. Plaintiffs allege that the loss of the scaffolding bar, and thus the failure of the claim against Universal, deprived Plaintiff Cynthia Schaefer of financial support, but any such deprivation overlaps entirely with the damages alleged in the negligent spoliation claims.[2] Nevertheless, despite the limited scope of the claim, the Court concludes that Plaintiffs state a claim for loss of consortium.

Defendants argue that Plaintiffs cannot assert a loss of consortium claim as a derivative to a negligent spoliation claim. Defendants state that: (1) the damages recoverable for a negligent spoliation claim are akin to those recoverable in a legal malpractice claim in that the damages compensate for pecuniary interests rather than personal injury; and (2) a loss of consortium claim is a derivative claim to an injured spouse's personal injury claim. Upon review of the cases cited by Defendants, the Court can find no support for the proposition that loss of consortium claims can be asserted only in conjunction with a personal injury claim. *See Blagg v. Illinois F.W.D. Truck & Equip. Co.*, 572 N.E.2d 920, 925–26 (Ill. 1991); *Brown v. Metzger*, 470 N.E.2d 302, 304 (Ill. 1984). Although *Blagg* and *Brown* discuss loss of consortium claims that are derivative to personal injury claims, neither case holds that the loss of consortium claims may be asserted

---

[2] Although the complaint asserts that Plaintiff Cynthia Schaefer also suffered loss of society – such as Plaintiff Matthew Schaefer's inability to assist Plaintiff Cynthia Schaefer with housework or childrearing or to provide companionship and affection – these allegations are construed as relating to claims that have been dismissed. Plaintiffs do not specifically allege that loss of the scaffolding bar caused these types of harms.

7

exclusively with personal injury claims, and neither case addresses loss of consortium claims in the context of a negligent spoliation claim.

Relatedly, Plaintiffs argue that the damages for their negligent spoliation claim should be similar to the damages they would have recovered against Universal. "[T]he measure of damages in a spoliation of evidence claim will be similar to that which could have been obtained in an underlying tort action." *Schusse v. Pace Suburban Bus Div. of Reg'l Transp. Auth.*, 779 N.E.2d 259, 264 (Ill. App. Ct. 2002). As plead in the complaint, Plaintiffs' claim of negligent spoliation against Brand and Dynegy subsumes the loss of consortium claim against Universal in the same manner that it subsumes the products liability claim. Stated otherwise, Plaintiffs may recover from Brand and Dynegy the damages they would have recovered for loss of consortium claim against Universal.

Accordingly, Defendants' Motion for Judgment on the Pleadings is denied.

## Measure of Damages

Defendants argue that the measure of damages for the negligent spoliation claim should reflect that Plaintiffs need only show a reasonable probability of success – instead of showing that success was more likely or not – on the underlying claim. (Doc. 269.) Specifically, Defendants suggest that the jury should determine and assign a percentage to Plaintiffs' chances of success with the claims against Universal if Plaintiffs had the scaffolding bar; determine the amount of damages Plaintiffs would have been awarded if their claims against Universal were successful; and multiply the percentage to the amount of damages to calculate the amount of damages for the negligent spoliation claim.

In *Petrik v. Monarch Printing Corp.*, 501 N.E.2d 1312, 1320 (Ill. Ct. App. 1986), the Appellate Court of Illinois discussed the measure of damages for negligent spoliation cases. In

8

considering Defendants' proposed measure of damages, the appellate court reasoned that, even with the spoliated evidence, a plaintiff's victory on the underlying claim is not guaranteed and that an award of damages equivalent to that of the underlying claim may result in a windfall for the plaintiff. *Id.* However, the appellate court also described the task of determining the likelihood of success on the underlying claims as "sheer guesswork" and suggested that perhaps the wrongdoer should bear the risk of a windfall. *Id.* at 1321. Ultimately, the appellate court declined to resolve the issue. *Id.* The Supreme Court of Illinois has acknowledged the issue but has also declined to resolve it. *Boyd v. Travelers Ins. Co.*, 652 N.E.2d 267, 272 (Ill. 1995). Moreover, there is a split on the issue among the highest courts of other states. *Compare Oliver v. Stimson Lumber Co.*, 993 P.2d 11, 21 (Mont. 1999) (adopting percentage multiplier measure of damages); *Holmes v. Amerex Rent-A-Car*, 710 A.2d 846, 853 (D.C. 1998) (same) with *Hannah v. Heeter*, 584 S.E.2d 560, 571 (W. Va. 2003) (adopting full measure of damages); *Smith v. Atkinson*, 771 So. 2d 429, 438 (Ala. 2000) (same).

When presented with an open question of state law, "a federal court must attempt to decide the case as the highest court of the state supplying the law would do." *Todd v. Societe BIC, S.A.*, 9 F.3d 1216, 1221 (7th Cir. 1993). Illinois' lower courts have stated, "[T]he measure of damages in a spoliation of evidence claim will be similar to that which could have been obtained in an underlying tort action." *Schusse*, 779 N.E.2d at 264; *Jones v. O'Brien Tire & Battery Serv. Ctr., Inc.*, 871 N.E.2d 98, 114 (Ill. Ct. App. 2007) *Fremont Cas. Ins. Co. v. Ace-Chicago Great Dane Corp.*, 739 N.E.2d 85, 91 (Ill. Ct. App. 2000). A measure of damages for negligent spoliation claims that would likely result in a significantly lesser award than what a plaintiff could have obtained in the underlying action cannot be characterized as a "similar" measure of damages. Additionally, Illinois courts frequently rely on the general principle that "it

9

is usually considered more just for an injured party to receive the windfall than for a wrongdoer to be relieved of full responsibility for his wrongdoing." *Lopez v. Morley*, 817 N.E.2d 592, 598 (Ill. Ct. App. 2004); *see e.g., Petrik*, 501 N.E.2d at 1321 ("Any other rule would enable the wrongdoer to profit by his wrongdoing at the expense of his victim); *Wills v. Foster*, 892 N.E.2d 1018, 1030 (Ill. 2008) ("A benefit that is directed to the injured party should not be shifted so as to become a windfall for the tortfeasor."); *In re Estate of Opalinska*, 45 N.E.3d 687, 695, (Ill. Ct. App. 2015) ("a party should not profit from his own wrongdoing").

Guided by opinions from Illinois' lower courts on the issue and considering the holdings of Illinois courts on similar issues, the Court denies Defendants' request to adopt their proposed measure of damages. The measure of damages for Plaintiffs' negligent spoliation claim is the amount of damages Plaintiffs would have been awarded if their claims against Universal were successful.

## CONCLUSION

Based on the foregoing, it is hereby ORDERED that Plaintiffs' Motion to Quash Trial Subpoenas (Doc. 223) is GRANTED. It is further ORDERED that Defendants' Motion for a Finding of Agency (Doc. 227), Motion for a Finding of Waiver (Doc. 219), and Motion for Judgment on the Pleadings (Doc. 200) are DENIED.

It is further ORDERED that Defendants' request on the measure of damages (Doc. 269) is DENIED. The measure of damages for Plaintiffs' negligent spoliation claim is the amount of damages Plaintiffs would have been awarded if their claims against Universal were successful.

**SO ORDERED.**

**DATED: April 18, 2017.**                    *s/    Reona J. Daly*
                                              **UNITED STATES MAGISTRATE JUDGE**